SEQUOIA MACHINERY, INC., a corporation, and Kaweah Company, a corporation, Appellants,

v.

J. Roderick JARRETT, Trustee of the Estate of James C. Clark, Bankrupt, Appellee.

No. 22194.

United States Court of Appeals
Ninth Circuit.

May 16, 1969.

Robert P. Stringham (argued), Tulare, Cal., for appellants.

Frank H. Lang, Jr. (argued), of Fullerton, Lang & Richert, Fresno, Cal., for appellee.

Sherwood Green, of Sherwood & Denslow Green, Madera, Cal., for amicus curiae, Allis-Chalmers Mfg. Co., supporting appellee.

Crowe, Mitchell, Hurlbutt, Clevenger & Long, Visalia, Cal., for amicus curiae.

Before DUNIWAY and ELY, Circuit Judges, and BYRNE, District Judge *.

DUNIWAY, Circuit Judge:

This bankruptcy case involves the interpretation of § 9401(1) of the California Uniform Commercial Code.[1] Appellants sold combines to James C. Clark by conditional sales contracts which were filed in the office of the California Secretary of State, but not in the office of the County Recorder. The combines are specialized equipment usable only for harvesting grain. Clark was not a farmer. He owned no land. Instead, he was a "custom harvester" who used the combines in harvesting the crops of various farmers in Tulare and King Counties on a contract basis.

After Clark filed a voluntary petition in bankruptcy, appellants repossessed and sold the combines for $30,200, which has been stipulated to be their present fair value. Appellee trustee in bankruptcy then petitioned for an order that the moneys received from the sale be turned over to him. The referee held that the harvesting combines were "equipment used in farming operations," and that the trustee was therefore entitled to the moneys, because the appellants' failure to record their security interests in the office of the County Recorder rendered them invalid as against the trustee. The District Court affirmed. So do we.

Appellants contend that the phrase "equipment used in farming operations" should be interpreted in light of the occupational status or contractual arrangements of the debtor-purchaser, rather than as referring to the actual intended use of the equipment itself. They claim that the grain harvesting combines, even though only usable for harvesting grain, were not "equipment used in farming operations" in *this* case, because Clark was not a farmer.[2]

Appellants' argument is based on the language of various provisions of the Code. They point out that § 9109 classifies goods as "equipment" if, *inter alia,* they are not included in the definition of "farm products," and defines "farm products" as including supplies only "if they are in the possession of a debtor engaged in raising, fattening, grazing, or other farming operations." Appellants conclude that the term "farming operations" is therefore to be restricted to activities in the nature of "raising, fattening, or grazing," under the maxim

---

* Honorable William M. Byrne, United States District Judge, Central District of California, sitting by designation.

1. "The proper place to file in order to perfect a security interest is as follows:
 (a) When the collateral is equipment used in farming operations, or farm products other than crops, or accounts or contract rights arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the county recorder in the county of the debtor's residence * * *.
 (b) [crops or timber] * * *.
 (c) In all other cases, in the office of the Secretary of State."

2. According to appellee, of the 49 states which have adopted the Uniform Commercial Code, 39 have adopted filing requirements under which this question could arise. However, this is evidently a case of first impression.

"expressio unius est exclusio alterius" and the concept "ejusdem generis." Appellants also argue that Clark's operations were not "essentially local," since he worked in two different counties, and point out that, according to a Uniform Commercial Code comment,

> "It is thought that sound policy requires a state-wide filing system for all transactions except the essentially local ones covered in subsection (1) (a) * * *." [3]

They point out that another Code section indicates that the drafters of the Code did not regard commercial harvesting equipment as of an "essentially local" type.[4] Consequently, they conclude that the Clark financing statements were properly filed in the office of the Secretary of State.

We are not persuaded. If the drafters of the Code had intended such a result, they could merely have written § 9401(1) to refer to "equipment of a farmer used in his farming operations." We doubt that they expected anyone to divine such a result from the references to which appellants refer. And even if the overall rationale for the local filing of financing statements covering equipment used in farming operations is that such transactions are "essentially local," it would be unworkable to tell secured sellers to file all financing statements centrally unless the transaction is "essentially local." How does one determine what is or is not "essentially local"?

 We think that the drafters of the Code carefully avoided defining "equipment used in farm operations" in terms of the occupational status or contractual arrangements of the debtor-use. In many cases it would be difficult to determine whether or not the debtor was a "farmer." One who owns or leases agricultural land, who raises crops thereon, and who purchases harvesting equipment solely for his own use on his own land, would clearly be a farmer within appellants' construction. But what of a person who owns or leases agricultural land, and farms it, but purchases harvesting equipment with the intention of using it on his own land some of the time, and using it at other times to harvest the crops of his neighbors on a contract basis? Under appellants' rationale he would be using the equipment *as a farmer* only when he was using it on his own land. In such a situation, would the equipment dealer have to determine what its "primary" intended use would be? Or would the intended use on a particular day or hour control? According to § 9401(3), a filing made in the proper place continues effective even though the use of the collateral should later change. But the Code does not say at what point one determines what the use is. Should it be when the security interest attaches, when the financing statement is filed, or when? Cf. In re Pelletier, D. Maine, 1968, 5 UCC Rep. 327, 330.

 The phrase "equipment used in farming operations" is clear and unambiguous. That was the only use to which this equipment could be or was put. We decline to resort to a construction that would raise more problems than it would solve.

 Finally, the California Equipment Dealers Association as amicus curiae suggests that § 9401(1) is ambiguous, and that we should therefore hold that any good faith attempt by a conditional seller to file a financing statement in the proper place should be sufficient to protect the security interest against a trustee in bankruptcy. But the Code does not allow this result. Section 9401 (2) provides:

> "A filing which is made in good faith in an improper place * * * is nev-

---

3. 23 West's Ann.Cal.Codes, p. 547 (comment to Cal.Comm.C. § 9401).

4. Cal.Comm.C. § 9103, which deals with conflict of law rules, speaks of "goods of a type which are normally used in more than one jurisdiction (such as automotive equipment, rolling stock, airplanes, road building equipment, commercial harvesting equipment, construction machinery and the like)."

ertheless effective * * * against any person who has knowledge of the contents of such financing statement."

Section 9301(1) provides, *inter alia*, that " * * * [A]n unperfected security interest is subordinate to the rights of · * * * (b) A person who becomes a lien creditor * * *."

Under section 70c of the Bankruptcy Act, 11 U.S.C. § 110(c), the trustee in bankruptcy has the status of an ideal hypothetical lien creditor, similar to a creditor without notice—even if the trustee has actual notice. Collier, Bankruptcy, 14th ed., § 70.53. And even apart from the Bankruptcy Act provision, the secured party would, under § 9401(2), have to prove that either the trustee in bankruptcy or perhaps all the unsecured creditors had actual knowledge of the contents of the financing statement. See In re Lux's Superette, Inc., E.D.Pa., 1962, 206 F.Supp. 368, 371; In re Smith, E.D. Pa., 1962, 205 F.Supp. 27; In re Luckenbill, E.D.Pa., 1957, 156 F.Supp. 129. Appellants have not done so.

Affirmed.