In the Matter of INVESTORS FUNDING CORPORATION OF NEW YORK, IFC Collateral Corporation and 2141 Lemoine Avenue Corporation et al., Debtors.

Nos. 74 B 1454, 74 B 1455 and 74 B 1511 to 74 B 1542.

United States District Court, S. D. New York.

May 23, 1978.

Weil, Gotshal & Manges, New York City, for trustee; Alan B. Miller, Jeffrey N. Rich, New York City, of counsel.

Robert J. Tiedemann, Jersey City, N. J., for Lester Weber.

## MEMORANDUM

### (APPLICATION OF LESTER WEBER)

BONSAL, District Judge.

The Trustee moves pursuant to Chapter X Rule 10–701 and Bankruptcy Rule 756 for summary judgment dismissing the application of Lester Weber. Weber cross-moves for an order determining that the Court lacks summary jurisdiction over this matter and permitting him to withdraw his application. The motion was argued on April 5, 1978.

On or before February 20, 1974, Lester Weber was the owner of real property located at 2031 Hudson Street in Fort Lee, New Jersey ("the Property"). On or about February 20, 1974, Weber made an agreement ("the Agreement") to convey the Property to Plaza Corporation ("Plaza") in consideration of $1,000,000 to be paid as follows: (a) $250,000 on the date of the Agreement, (b) $35,000 by Plaza's taking title to the Property subject to a first mortgage in that amount held by the First National Bank of Fort Lee, and (c) $715,000 to be paid within two years from the date of the Agreement. The Agreement also provided that if Plaza failed to pay the $715,-000 balance by the close of the two-year period, title to the property would revert to Weber and he would be permitted to keep the $250,000 as liquidated damages. Finally, under the Agreement, Weber was allowed to collect and retain all rentals from the Property during the two-year period.

Pursuant to the Agreement, Plaza paid Weber $250,000 on February 20, 1974. The deed, dated February 20, 1974, executed by Weber conveyed absolute title to Plaza, reciting a consideration of $1,000,000, receipt of which was acknowledged. The deed was recorded the same day. It did not refer to the Agreement, which was not recorded.

Plaza had been acquiring title to other tracts of land in Fort Lee in order to devel-

op a "multi-use complex" near the New Jersey side of the George Washington Bridge ("George Washington Bridge Assemblage"). Plaza's acquisitions were partly financed by Investors Funding Corporation of New York ("IFC"), one of the debtors herein.

On or about March 5, 1974, March 19, 1974, April 1, 1974, April 16, 1974, and May 15, 1974, Plaza executed mortgages to IFC Collateral Corporation ("Collateral"), another of the debtors herein. These mortgages included the Property which Weber had conveyed to Plaza and secured existing debts and/or additional loans which would be made in connection with the George Washington Bridge Assemblage. Each mortgage was recorded.

In May, 1974, Plaza became unable to meet its mortgage obligations, and by agreement dated June 7, 1974, Plaza agreed, in lieu of foreclosure, to convey the George Washington Bridge Assemblage to an affiliate of Collateral, 2141 Lemoine Avenue Corporation ("Lemoine"). By deed dated the same day, the Property was conveyed to Lemoine, and the deed was recorded.

Weber has remained in possession of the property and has been collecting and retaining rentals from sub-tenants since February 20, 1974.

On October 21, 1974, IFC and its wholly owned subsidiary, Collateral, filed petitions for reorganization pursuant to Chapter X of the Bankruptcy Act. On October 30, 1974, other debtor corporations, including Lemoine, filed a joint consolidated petition for reorganization under Chapter X. These petitions were approved, and by order dated November 1, 1974 James Bloor was appointed Reorganization Trustee.

By Order to Show Cause, dated May 19, 1975, Weber applied for an order determining that he has an equitable purchase money mortgage on the Property, declaring that his Agreement with Plaza is in default,

and ordering that the Property be reconveyed to him. On June 24, 1975, the Trustee filed his answer, counterclaims, and cross-motion to Weber's application. The parties then adjourned the Court's consideration of the matter while they conducted extensive discovery for two and one-half years. On December 7, 1977, the Trustee filed his motion for summary judgment dismissing Weber's application. The motion was adjourned several times owing to Weber's substitution of attorneys. His new attorney then cross-moved for an order permitting Weber to withdraw his application on the grounds that the Court lacked jurisdiction over this matter.

I.

## JURISDICTION

As a favorable determination of Weber's cross-motion would obviate the need to rule on the Trustee's motion, it will be considered first. Weber contends that this Court lacks summary jurisdiction [1] to adjudicate the rights of the parties here because the Property is not in the Trustee's possession and because Weber has an adverse claim thereto. The Trustee argues that "[b]y making the application for affirmative relief from the court, Weber has invoked, consented and voluntarily submitted himself and his claims to the summary jurisdiction of the court and . . . has thereby irrevocably waived any right he may have had to proceed in a plenary action."

"There is hardly any question of law better settled than that . . . a court of bankruptcy has no jurisdiction, *without the consent of the adverse claimant*, to hear and adjudicate in a summary proceeding a controversy as to title of or claims upon property held adversely to the bankrupt estate, where such property came into the claimant's possession prior to bankruptcy." (Emphasis added.) 2 Collier on Bankruptcy

---

1. Summary proceedings are less formal than plenary suits. Where a controversy concerns property in the actual or constructive possession of the bankruptcy court, the court may

exercise summary jurisdiction. *Katchen v. Landy*, 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); 2 Collier on Bankruptcy, ¶¶ 23.02[2], 23.04[2] (14th ed. 1976).

774

¶ 23.06[1] at 494 (14th ed. 1976). Indeed, even if Weber is only considered a *bona fide* lessee of the Property, this Court would not have summary jurisdiction without his consent. *Id.* ¶ 23.06[12] at 519.

█ However, by bringing his application Weber has consented to the summary jurisdiction of this Court; he cannot now object and withdraw his application. He filed his application nearly three years ago. During this period, he and the Trustee have conducted extensive discovery by depositions and interrogatories. Some 250 pages of testimony have been taken. "When an adverse claimant to property voluntarily submits the question of his claim for determination by the bankruptcy court, jurisdiction is *conferred by consent* . . . . [T]he claimant himself [may not] thereafter question the exercise of such jurisdiction." *Id.* ¶ 23.08[5] at 549–550. Moreover, by invoking the Court's jurisdiction, Weber has subjected himself to the Trustee's counterclaims, as they arise out of the same transaction. *Id.* at 551; *Alexander v. Hillman*, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192 (1935); *Floro Realty & Investment Co. v. Steem Electric Corp.*, 128 F.2d 338 (8th Cir. 1942); *see Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Inter-State National Bank of Kansas City v. Luther*, 221 F.2d 382 (10th Cir. 1955), *cert. dismissed under Rule 60*, 350 U.S. 944, 76 S.Ct. 297, 100 L.Ed. 823 (1956).[2]

## II.

## TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

In his motion for summary judgment, the Trustee argues that under Section 70(c) of the Bankruptcy Act he is vested with the status of an ideal creditor without notice.

He contends that because Weber failed to record the Agreement his claim to an equitable purchase money mortgage is void against a judgment creditor without notice, under the applicable New Jersey law. Therefore, the Trustee concludes, as he is given the status of an ideal judgment creditor by the Bankruptcy Act, Weber's claim is void against him.

Weber argues that, under New Jersey law, possession inconsistent with record title charges the judgment creditor with the knowledge that an inquiry of the possession would have revealed. Since he was in possession of the Property long before the filing of the Chapter X petition, he contends that the Trustee had constructive notice of his claim and therefore cannot void it.

Section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c), provides to the extent here relevant:

"The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists . . . ."

Under Section 70(c), "the trustee's powers . . . are those which the state law would allow to a supposed creditor of the bankrupt who had, at the date of bankruptcy, completed the legal (or equitable) processes for perfection of a lien upon all the property available for the satisfaction of his claim against the bankrupt." 4A Collier on Bankruptcy ¶ 70.49 at 596–97 (14th ed. 1976). This section "confers on the trustee in bankruptcy the status of an

2. Weber also contends that this Court lacks jurisdiction because Weber's former attorneys failed to comply with the Rules of Bankruptcy Procedure in that they commenced this action with an order to show cause rather than with an adversary complaint, as now required by Rule 701 of the Rules of Bankruptcy Procedure. However, the Chapter X Rules, which incorporate Part VII of the Bankruptcy Rules (Rules 701–782 inclusive) were made effective on Au-

gust 1, 1975, more than two months after Weber brought his application. Furthermore, the Supreme Court's order dated April 28, 1975, which adopted the Chapter X Rules, provided that they would "be applicable to proceedings then pending except to the extent that in the opinion of the court their application in a particular proceeding then pending would not be feasible or would work injustice, in which event the former procedure applies."

ideal hypothetical creditor and as such gives him the status of a creditor without notice, despite any actual knowledge he may personally have had at the time of bankruptcy and regardless of the fact that there may not exist any actual creditor without notice." [Citations omitted.] *In re Babcock Box Co.*, 200 F.Supp. 80 (D.Mass.1961); *accord, Sequoia Machinery, Inc. v. Jarrett*, 410 F.2d 1116 (9th Cir. 1969); *Hoffman v. Cream-O-Products*, 180 F.2d 649 (2d Cir. 1950).

■ However, the extent of the Trustee's rights and powers as a lien creditor is determined by state law. 4A Collier on Bankruptcy, *supra* at 601–03. Section 70(c) does not "confer on the trustee any greater rights than those accorded by the applicable [state] law to a creditor holding a lien by legal or equitable proceedings." *Id.* at 604. Thus, it is necessary to examine the law of the jurisdiction governing the Property, *Robbins v. Bostian*, 135 F.2d 298, 299 (8th Cir. 1943)—here that of New Jersey.

N.J.S.A. § 46:16–1 provides that "agreements for the sale of real estate" and "mortgages, defeasible deeds or other conveyances in the nature of a mortgage" may be "acknowledged or proved and then recorded in the office of the county recording officer of the county wherein the real estate is situate[d]."

N.J.S.A. § 46:22–1 provides:

"Every deed or instrument of the nature or description set forth in Section 46:16–1 of this title shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against subsequent judgment creditors without notice . . . ."

It is conceded that Weber never recorded the Agreement under which he asserts his claim to an equitable mortgage; the deed, which was recorded, unconditionally conveyed the Property to Plaza for $1,000,000, the receipt of which was acknowledged in the deed. Therefore, by reason of N.J.S.A. § 46:22–1, Weber's equitable purchase money mortgage is "void and of no effect

against subsequent judgment creditors without notice." The Trustee argues that since Section 70(c) vests him with the status of an ideal New Jersey judgment creditor without notice, Weber's claim is void against him. Weber contends that although the Agreement was not recorded, his possession of the Property places a judgment creditor on constructive notice of his claim; consequently, the Trustee, who stands in the shoes of such a creditor cannot void his claim.

■ Weber is correct in his statement that possession can provide a judgment creditor with constructive notice. Under New Jersey law, where "exclusive possession *inconsistent* with the record has been open and notorious . . . the judgment creditor . . . [has] been charged with a duty to inquire of the one in possession concerning the right by which he occupies the premises and [has] been held bound by the knowledge which such inquiry would have revealed." *Michalski v. United States*, 49 N.J.Super. 104, 139 A.2d 324, 327 (1958); *see Zurich v. Perlmutter*, 94 N.J.L. 328, 110 A. 826 (1920).

■ However, Section 70(c) of the Bankruptcy Act confers upon the Trustee the status of an ideal judgment creditor *without notice*—"despite any actual knowledge he may personally have had at the time of bankruptcy and regardless of the fact that there may not exist any actual creditor without notice." *In re Babcock Box Co., supra.* Moreover, this section "was designed from the first to strike down secret liens." Collier, *supra* ¶ 70.46 at 559. As the very purpose of Section 70(c) was to permit the Trustee to void unrecorded agreements like Weber's regardless of either the Trustee's knowledge or knowledge on the part of any or all creditors, 4A Collier, *supra* ¶ 70.53, Weber's claim is void as against the Trustee.

Finally, Weber contends that IFC fraudulently procured the deed to Weber's Property and that this constitutes a genuine issue as to a material fact, precluding the Court from granting summary judgment at this

time. However, none of the affidavits or memoranda submitted by Weber set forth specific facts supporting this conclusory allegation. *See* Fed.R.Civ.P. 56(e). In light of the two and one-half years of discovery, the inability of Weber to come forward with evidence indicating how IFC defrauded him justifies the Court in granting summary judgment at this time. *See Modern Home Institute, Inc. v. Hartford Accident & Indemnity Co.,* 513 F.2d 102 (2d Cir. 1975); *Dressler v. MV Sandpiper,* 331 F.2d 130 (2d Cir. 1964).

Accordingly, the Trustee's motion for summary judgment is granted.

It is so ordered.