NATIONAL CITY BANK, NORWALK *v.* GOLDEN ACRE TURKEYS, INC.;
TIFFIN FARMERS COOPERATIVE, INC., APPELLEE; BUCKEYE
PRODUCTION CREDIT ASSOCIATION, APPELLANT.

[Cite as *Natl. City Bank, Norwalk v. Golden Acre
Turkeys, Inc.* (1992), 65 Ohio St.3d 371.]

---

(No. 91–2315—Submitted September 16, 1992—Decided December 14, 1992.)

*Tomb & Hering* and *James D. Supance,* for appellee.

*Bernard K. Bauer Co., L.P.A.,* and *Bernard K. Bauer,* for appellant.

BROGAN, J. The narrow issue raised by this appeal is whether turkey processing equipment is "equipment used in farming operations" within the contemplation of R.C. 1309.38(A)(2), so that a security interest in such equipment is perfected when the financing statement is filed with the county recorder of the debtor's residence.

The relevant Ohio filing statute is now R.C. 1309.38(A)(2) and (4),[1] which provide:

"(A) The proper place to file in order to perfect a security interest is as follows:

" * * *

"(2) *when the collateral is equipment used in farming operations,* or farm products, or accounts or general intangibles arising from or relating to the sale of farm products by a farmer, then in the office of the county recorder in the county of the debtor's residence * * *.

" * * *

---

1. When the disputed financing statement was filed, these subsections were numbered (A)(1) and (A)(3), but were the same insofar as relevant to this case. See 130 Ohio Laws 340.

"(4) *in all other cases, in the office of the secretary of state and, in addition, if the debtor has a place of business in only one county of this state, also in the office of the county recorder of such county * * *."* (Emphasis added.)

The order of priority of competing interests in the same collateral is set forth in R.C. 1309.20(A)(2), which subordinates an unperfected security interest to the rights of a person who becomes a lien creditor before the security interest is perfected. A "lien creditor" is defined as "a creditor who has acquired a lien on the property involved by attachment, levy or the like." R.C. 1309.20(C).

If the Behms' equipment was equipment used in farming operations, Buckeye had perfected its security interest and had the first priority to the $27,947 in sale proceeds. If the Behms' turkey processing equipment was not used in farming operations, Buckeye's security interest was not perfected and Tiffin had the first priority lien.

The court of appeals held that there was an insufficient nexus between the turkey processing equipment and the farming operations to allow classifying the equipment as farm equipment. The court held that "subjecting a live turkey to a manufacturing process causes it to lose its status as a farm product." The court noted that the machinery which made this transformation was not farm equipment.

The Uniform Commercial Code provides no definition of "farming operations," although it does define "farm products." R.C. 1309.07(C) (UCC 9–109) states that goods are

" 'farm products' if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in the *unmanufactured states,* such as ginned cotton, wool-clip, maple syrup, milk, and eggs, and if they are in the possession of a debtor engaged in raising, fattening, grazing, or other farming operations. If goods are farm products they are neither equipment nor inventory." (Emphasis added.)

Official Comment 4 to UCC 9–109 (R.C. 1309.07) provides:

"Goods are 'farm products' only if they are in the possession of a debtor engaged in farming operations. Animals in a herd of livestock are covered whether they are acquired by purchase or result from natural increase. *Products of crops or livestock remain farm products so long as they are in the possession of a debtor engaged in farming operations and have not been subjected to a manufacturing process.* The terms 'crops,' 'livestock' and 'farming operations' are not defined; however, it is obvious from the text

that 'farming operations' includes raising livestock as well as crops; similarly, since eggs are products of livestock, livestock includes fowl.

"When crops or livestock or their products come into the possession of a person not engaged in farming operations they cease to be 'farm products.' If they come into the possession of a marketing agency for sale or distribution or of a manufacturer or processor as raw materials, they become inventory.

"Products of crops or livestock, even though they remain in the possession of a person engaged in farming operations, lose their status as farm products if they are subject to a manufacturing process. What is and what is not a manufacturing operation is not determined by this Article [R.C. Chapter 1309]. At one end of the scale some processes are so closely connected with farming—such as pasteurizing milk or boiling sap to produce maple syrup or maple sugar—that they would not rank as manufacturing. On the other hand an extensive canning operation would be manufacturing. The line is one for the courts to draw. After farm products have been subjected to a manufacturing operation, they become inventory if held for sale." (Emphasis added.)

In the case of *In re Anderson* (Bankr.Ct.N.D.Ohio 1969), 6 U.C.C.Rep.Serv. 1284, the court found that a credit association's security interest in poultry equipment used in the mass production of chicken eggs by a debtor who sold the eggs to a jobber and who did not consider himself engaged in farming was properly perfected by filing in the county of the debtor's residence pursuant to former R.C. 1309.38(A)(1), now (A)(2), since the collateral was "equipment used in farming operations" within the meaning of that section.

The court found that the poultry equipment was equipment used in the mass production of chicken eggs and that, because of the statute's ambiguity, the courts must approach the interpretation of the facts on a functional basis. The court determined that R.C. 1309.07 and 1309.38, read *in pari materia,* "would seem to indicate that any business operation which results in the production of 'farm products' is 'farming,' even though the business operation is performed in a factory." The court found that since eggs are "farm products" as defined in R.C. 1309.07, the equipment used to produce them is necessarily used in farming operations within the purview of R.C. 1309.38.

In the case of *In re K.L. Smith Enterprises, Ltd.* (Bankr.Ct.D.Colo.1980), 2 B.R. 280, the debtor bankrupt owned and operated an egg laying and processing business. The debtor sold the eggs to grocery stores. After the debtor's chickens laid their eggs, the eggs were washed, candled and oiled. The eggs were then boxed in the debtor's operations. The court concluded that the eggs were farm products and not inventory. The court held:

"The pasteurization of milk or the boiling of sap seem[s] to the Court to be even more significant treatment of raw product than [do] the washing,

candling, and spraying with oil of eggs. At the very least, they are in the same category, and the internal structure of the egg is not changed. The packaging of eggs in cartons does not seem to this Court to be analogous to the 'extensive canning operations' characterized by the Official Comment. Nearly all farm products must be packaged in some way for delivery to the farmer's customer. *The facts that the packaging is done in the customer's package to eliminate a step in handling or that the operation is highly mechanized do not seem to this Court to disqualify the operation from the normal farm category.* The language of the Code seems reasonably specific in its determination of what are farm products and does not appear to distinguish between the methods of producing the same product." (Emphasis added.) *Id.* at 283.

In *Albion Natl. Bank v. Farmers Cooperative Assn. of St. Edward* (1988), 228 Neb. 258, 422 N.W.2d 86, the Nebraska Supreme Court held that corn that had gone through a drying process remained a farm product and had not been subjected to a manufacturing process within the meaning of Neb.Rev.Stat. UCC § 9–109.

In *In re Blease* (D.C.N.J.1978), 24 U.C.C.Rep.Serv. 450, the court used the New Jersey equivalent of R.C. 1309.07(C), defining "farm products," to determine the status of a corn dryer purchased by a farmer but located away from the farm at a grain elevator site in an industrial park. The court ruled that the drying of grain is a farming operation.

As a result of the ambiguity of the term "equipment used in farming operations," courts have devised a number of tests to determine whether the collateral is properly classified as equipment used in farming operations. One such test is the "normal use" test, which focuses on the inherent qualities of the collateral and the uses to which that type of collateral would normally be put. The leading case advocating the normal use test is *Sequoia Machinery, Inc. v. Jarrett* (C.A.9, 1969), 410 F.2d 1116. In that case, the court held that harvesting combines used by the bankrupt in custom harvesting operations, although the bankrupt was not a farmer, constituted "equipment used in farming operations."

In the case of *In re Burgess* (Bankr.Ct.W.D.Okla.1983), 30 B.R. 364, the court found that tractors and plows owned by the operator of a diesel repair service were "equipment used in farming operations," since tractors and plows are normally used in that manner. The court noted that the rule "rests upon a predictable approach to filing regarding equipment and other items generally associated with farming operations." *Id.* at 366. The court noted that such a rule relieves the creditor of the burden of monitoring how the collateral is actually used.

In contrast, in the case of *In re Reier* (Bankr.Ct.S.D.Ohio 1985), 53 B.R. 395, the United States Bankruptcy Court for the Southern District of Ohio agreed with the majority of courts that it is the actual use of the equipment which is controlling and not its intrinsic or potential nature. In *Reier* the debtor's business was reselling trailers and building flatbed trailers, horse trailers, farm equipment, and other trailers for the purpose of transporting livestock. The loan was made to the debtor by the bank so that the debtor could purchase the trailers for display at a county fair. The debtor, Reier, was not a farmer. The bank did not comply with the dual filing requirements of R.C. 1309.38(A)(4).

The bank urged the court to apply the "normal use" test, arguing that such trailers would normally be used in farming operations, although admittedly Reier's were used for display or business purposes. The court noted the following, *id.* at 398:

"Without an extensive discussion of the 'normal use' test, this court merely notes that the *Burgess* decision is at this time a distinctly minority opinion and this court is not prepared to state unequivocally that stock trailers are 'normally' used in farming operations. Such trailers are frequently used to transport animals in connection with a variety of operations not directly associated with farming. In addition, it appears sufficiently difficult for creditors to discern intended or actual uses of collateral, without imposing the necessity of divining what might be considered the 'normal' use of collateral."

Buckeye argues that the lower courts erred in this case when they used one category of collateral under R.C. 1309.38(A)(2) to define another. In other words, Buckeye argues that it was error to define "equipment used in farming operations" by examining the definition of "farm products," since "farm products" is itself a separate category of collateral under the statute. We disagree.

Since the legislature did not define "equipment used in farming operations," it is reasonable to examine whether the debtor's equipment that is claimed to be "equipment used in farming operations" is used in some manner to produce a farm product. The purpose of any farming operation is to produce farm products. Whether the court uses the "normal use" test or the "actual use" test, we agree with the court of appeals that the Behms' turkey processing equipment used to manufacture turkey wieners was not equipment used in farming operations, but equipment used in a manufacturing process, and that dual filing under R.C. 1309.38(A)(4) was necessary to perfect a valid security interest in the equipment. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for H. BROWN, J.