**In re Dannie GILDER, Debtor.**

**Dannie GILDER, Plaintiff,**

v.

**CASE CREDIT CORPORATION, Defendant.**

**Bankruptcy No. 98–10691–399.**
**Adversary No. 98–1019–399.**

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

Sept. 30, 1998.

Tom K. O'Loughlin II, O'Loughlin, O'Loughlin & McManaman, L.C., Cape Girardeau, MO, for movant.

John L. Oliver, Jr., Oliver, Oliver & Waltz, P.C., Cape Girardeau, MO, for Case Credit Corporation.

## MEMORANDUM OPINION
## AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

This is a lien perfection and avoidance dispute. It is presented to this court on debtor's Motion for Summary Judgment. The issue is whether Case Credit Corporation properly perfected its security interest in twenty-seven tractors and other equipment by recording its financing statements in

the county of debtor's residence, pursuant to Mo.Rev.Stat. § 400.9–401(1)(a) (1994) or whether perfection required filing with the Secretary of State under section 400.9–401(1)(c). If the tractors and other equipment purchased constitute "equipment used in farming operations," then the local filing under section 400.9–401(1)(a) was appropriate. The court holds that debtor's "use" of the equipment controls its characterization, and because the court finds that the debtor used the · equipment for non-farming purposes, recording with the Secretary of State was necessary. Case Credit Corporation's security interests are therefore, unperfected and may be avoided under the "strong arm" powers of 11 U.S.C. § 544. Summary Judgment is granted in favor of the debtor.

## JURISDICTION

This is Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 9.01 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 157(b)(2)(K).

## FACTS

Dannie Gilder, the debtor, ("Debtor" or "Plaintiff") operated a commercial excavation business and had his principal place of business and residence in Cape Girardeau County, Missouri (Answer, ¶8). Between 1993 and 1996, Debtor made fourteen purchases from four different Case International Harvester dealers, pursuant to which Debtor acquired a total of twenty-seven tractors, six dirt scrapers, four dirt pans, two dirt scoops and two electric valve set-ups. The purchases are listed on Exhibit No. 1 to Debtor's Motion for Summary Judgment, and are further detailed on the Retail Installment Sale Contracts and Security Agreements ("Security Agreements") attached as Exhibits 2–15 to the Motion. (Gilder Aff. ¶4, 5 and Case Credit's Response to Plaintiff's Request for Admissions, ¶3). The four dealers, Schneider Equipment Company ("Schneider"), Baker Implement Company ("Baker"), Nelson Trac-

tor & Equipment Co., Inc. ("Nelson"), and Medlin Equipment Company ("Medlin"), each retained a security interest in the equipment sold to the Debtor and assigned that interest to Case Credit Corporation ("Case Credit"). Case Credit served as the financing corporation for these Case International Harvester dealers and is the present owner and holder of the notes and security agreements. Either Case Credit or its assignors recorded financing statements for each purchase with the recorder of deeds in Cape Girardeau County. In no instance, however, did Case Credit or the dealers file a financing statement for any of the purchases with the Secretary of State in Jefferson City.

On June 16, 1998, Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, indicating in his bankruptcy schedules that the Debtor disputed the liens of Case Credit. Shortly thereafter, Debtor filed the present Complaint against Case Credit seeking a determination of the nature and extent of Case Credit's security interests in the equipment. Debtor asserts that Case Credit's security interests in the equipment are unperfected, and therefore avoidable pursuant to the strong-arm powers of 11 U.S.C. § 544 because Case Credit and/or its dealers failed to record the financing statements with the Secretary of State as required under Mo.Rev.Stat. § 400.9–401(1)(c) (1994) in order to perfect interests in collateral that is not otherwise provided for in section 400.9–401(1). Case Credit maintains that its security interests were excepted from recording with the Secretary of State because the collateral involved was "equipment used in farming operations" which is perfected under Mo.Rev. Stat. § 400.9–401(1)(a) (1994) by filing in the office of the recorder of deeds in the county of the debtor's residence.

### Procedural Background

The present matter is before the court on Debtor's Motion for Summary Judgment (the "Motion") wherein Debtor seeks an order declaring that (1) Case Credit's security interests in the equipment purchased from the four dealers (with the exception of a Case 5250 tractor which Debtor admits was used as farm equipment) are unperfected; and

that (2) Case Credit, consequently, holds only an unsecured claim in this Chapter 11 bankruptcy. In support of his Motion, Debtor relies upon his Affidavit filed with the Motion, ("Gilder Aff."), and Plaintiff's Memorandum and Additional Record in Support of Summary Judgment filed September 11, 1998, together with the Affidavit of Johnny Below ("Below Aff."), attached thereto.[1] Johnny Below was a former salesman for Nelson, Schneider, and Baker and made each of the six sales from Baker to the Debtor.

In response, Case Credit asserts that genuine issues of fact exist concerning the intended use of the equipment; Debtor's representations concerning the equipment's use; and Case Credit's right to rely on purchase orders and other documents signed by Debtor certifying that the equipment was being purchased for "agricultural use." For its opposition, Case Credit relies upon (1) the Affidavits of current custodians of record for Baker, Nelson and Medlin; (the "Baker Aff.," Nelson Aff.," and "Medlin Aff.," respectively); (2) Debtor's Bankruptcy Schedule B item 27, which describes the equipment purchased from Case Credit; and (3) copies of Case Credit's financing statements for Baker, Nelson and Medlin showing perfection with the offices of the recorder of deeds of Cape Girardeau County. Case Credit did not file an opposing affidavit concerning the purchases from Schneider. In addition, Case Credit relies upon, and directs this court to its Answers to Plaintiff's Interrogatories and Requests for Admissions, as well as, Plaintiff's Answers to Case Credit's Interrogatories and Request for Production of Documents. Case Credit filed the responses to this discovery as attachments to its recent Motion to Strike Plaintiff's Memorandum and Additional Record ("Plaintiff's Memorandum").[2] The court granted Case Credit's Motion to Strike, in part, and struck from its

consideration the Supplemental Affidavit of Dannie Gilder attached thereto because the original executed affidavit was not timely filed.

### Facts bearing upon Intended or Actual Use

Although each purchase from the four dealers must be analyzed separately, (as summarized below), Case Credit's general defense to the Motion is that the dealers relied upon various purchase orders or certificates signed by Dannie Gilder or his representative, indicating that the equipment was purchased for agricultural use and was accordingly, exempt from sales tax. These same certificates required the purchaser to acknowledge that if the equipment purchased was not used exclusively for agricultural purposes, the purchaser would be liable for the tax, interest and penalties. In fact, none of the dealers collected sales tax on any of Plaintiff's purchases. (Nelson Aff. ¶ 2a; Medlin Aff ¶ 2a; and Baker Aff. ¶ 2a).

For his part, the Debtor attests in his Answer to Case Credit's Interrogatory, No. 1C, that he did not claim the sales were exempt from tax, but rather expected to be assessed and pay sales tax on the equipment. (Plt.'s Ans. Interrog. No. 1C). Debtor also acknowledges in other interrogatory answers that sales tax liability has been assessed and that he has been unable to pay the taxes. (Plt.'s Ans. Interrog. No. 1A, B). Finally, in his bankruptcy Schedules, Debtor lists an undisputed liability to the Missouri Department of Revenue for sales taxes in the amount of $340,947.

The factual record before the court further reflects the following material and uncontroverted general facts.

(1) Since the date of purchase, all of the tractors and equipment (except the Case 5250 tractor) have been used ex-

---

1. The Supplemental Affidavit of Dannie Gilder filed as Attachment # 3 to Plaintiff's Memorandum in Support of the Motion for Summary Judgment was struck by this court's Order of September 25, 1998, in response to Case Credit's Motion to Strike.

2. Case's Answers to Plaintiff's Interrogatories and Requests for Admissions are denominate as "Case's Ans. Interrog." and "Case's Ans. Req.

Adm." respectively. Plaintiff's Answers to Case's Interrogatories and Request for Production of Documents are denominated as "Plt.'s Ans. Interrog." and "Plt.'s Ans. Req. Prod ." Although Case's Requests for Admissions are unsigned, because Case submitted its Answers to the Requests for Admissions as part of its Motion to Strike, the court will consider those Answers just as if properly executed copies had been filed.

clusively in an excavating and dirt moving business and never for farm purposes. (Gilder Aff. ¶ 14).

(2) Case Credit's dealers were advised and Debtor believed the sales people at Schneider, Baker, Medlin and Nelson specifically knew that the equipment was going to be used in an excavation business and not on the Debtor's farm. (Gilder Aff. ¶ 10).

(3) Debtor's intended use of the equipment at the time of purchase was for an excavating business. (Gilder Aff. ¶ 8).

(4) Case Credit's dealers (Medlin, Baker and Nelson) relied upon exemption certificates or purchase orders containing debtor's representation that the equipment would be used exclusively for agriculture use when they sold the equipment without collecting sales tax, and when they filed their UCC forms for perfection with only the recorder of deeds in Cape Girardeau County. (Medlin Aff. ¶ 2; Baker Aff. ¶ 2; and Nelson Aff. ¶ 2).

(5) Case Credit is otherwise without personal knowledge of what its dealers knew concerning whether the equipment would be used for industrial excavation purposes, but based upon records and documents signed by the Debtor, Case Credit denies that the intended use was for industrial excavation purposes; and based on the "end owner" codes showing agricultural use, Case Credit denies that its dealers knew the use would be non-agricultural.[3] (Case's Ans. Req. Adm. Nos. 17–20).

The record also reflects the following specific facts concerning purchases from each of the dealers.

**Purchases from Nelson.**

Debtor made five different purchases from Nelson Tractor & Equipment Co., Inc. between December 29, 1993, and August 1, 1996. The purchases are described on the Security Agreements identified as Plaintiff's Exhibit Nos. 4, 5, 9, 10, and 11, as well as on copies of the purchase orders for those transactions attached to the affidavit of Steven Baehr, custodian of records for Nelson. Nelson's affidavit of Steve Baehr also attaches a Missouri Department of Revenue "Farmer's Exemption Certificate" bearing the date, November 11, 1994. Larry Martin, the accountant for Plaintiff, signed the Exemption Certificate. The relevant text of the Exemption Certificate is as follows:

I hereby certify that the products purchased, as shown on the attached invoice or billing, will be used or consumed for the purposes exempt from sales or use tax by the statute quoted on the reverse side of this form.

I further certify that if any of the products on said invoice or billing is not used as certified above, . . . I will so notify seller and pay tax thereon. Should I not so notify seller then I am liable for tax, interest and penalty due on such purchases.

Debtor observes, and the court finds, that none of the purchases occurred on November 11, 1994, so that it is not entirely clear that this exemption form even relates to the purchases involved in this case. Moreover, the purchase reflected by Plaintiff's Exhibit No. 11 pre-dates the Exemption Certificate, and thus Case Credit could not have relied upon the certificate in recording the financing statement on December 30, 1993. Additionally, with respect to the Nelson sales, Debtor states that Johnny Below, then an employee of Nelson, and Duane Chronister, (also an employee of Nelson)[4] drove to a site in Illinois and viewed Debtor's tractors that were destroyed while working on a levy. (Below Aff. ¶ 21, 22). Based upon his position as a salesman for Nelson, and this experience with Duane Chronister, Johnny Below attests that he believed, Nelson knew the

---

**3.** Although no definition or explanation has been given for "end owner" codes, the court determines from Case Credit's use of the term in its Answers to Plaintiff's Interrogatories that the term refers to a code selected by the dealer to describe the type of sale and that the code is communicated to Case Credit.

**4.** In response to Plaintiff's Interrogatory No. 1, Case Credit identified Duane Chronister as ·an individual with Nelson who would have knowledge of the purpose for which the equipment in Plaintiff's Exhibit 1 was purchased.

equipment was sold for use in Debtor's excavating business. (Below Aff. ¶ 22).

## Purchases from Medlin

Debtor made two purchases from Medlin Equipment Company on April 5, 1996 and November 4, 1996. These purchases are detailed in the purchase orders attached to the affidavit of Don A. Medlin submitted by Case Credit in opposition to summary judgment, and by the Security Agreements identified by Plaintiff's Exhibits 13 and 14. The Medlin purchase orders contain two places for the purchaser's signature: (1) at the bottom with a notation "Purchaser's signature;" and (2) just above the purchaser's signature line, as part of a separate agricultural use certification. Both lines on both purchase orders from Medlin bear the signature of Dannie Gilder. The signed certification reads:

> I certify the items on this invoice are for agricultural use. If these items are not used exclusively for this purpose, I will be liable for the tax, interest and penalty. Signed: /s/ Dannie Gilder

Debtor has offered no testimony or evidence other than Debtor's statements in paragraphs 8, 10, and 14 of his Affidavit (summarized in the general facts above) to refute the certification of use contained on these contemporaneously executed purchase orders.

## Purchases from Baker

The Baker purchases included five different sales occurring between June 22, 1994, and January 5, 1996. Purchase orders for each of the sales described in the Security Agreements marked as Plaintiff's Exhibits 2, 3, 6, 7 [5], 8, and 15 are attached to the affidavit of Steven Brown, filed by Case Credit in opposition to summary judgment. The purchase orders each contain an agricultural use certification set out in a separate paragraph but do not require a separate signature as in the Medlin purchase orders above. The certification language on these purchase orders is identical to the certification on the Medlin purchase orders.

Although Baker maintains that it relied on the agricultural use certification contained in its purchase orders to determine where to file to perfect its security interests, Baker could not have relied on the purchase order for the thirteen new tractors described in Plaintiff's Exhibit No. 8, because that purchase order is dated January 5, 1996, and the financing statement was filed on December 20, 1995. In addition, Debtor states that he "did not know there was an exemption contained in the documents given to [him] by Baker Equipment Company." (Plt.'s Ans. Interrog. No. 1D). Johnny Below also attests that as a salesman at Baker, he sold all of the equipment from Baker to the Plaintiff, (Below Aff. ¶ 6), and at the time he made the sales, he knew that all of the equipment was bought by the Plaintiff for the purpose of use in Plaintiff's excavating business and not for any farming purpose. (Below Aff. ¶ 9, 10). Below also testifies that he knew the equipment would be used in many counties in Missouri, as well as, outside of the state, and at the time he made the sales, he was not even aware that there was a farmer's exemption contained in the purchase orders. (Below Aff. ¶ 15). Moreover, Below testifies that he never discussed the exemption with the Debtor during any of the purchases, (Below Aff. ¶ 16), and he suggests that Baker delivered many of the tractors directly to Debtor's construction or excavation sites. (Below Aff. ¶ 18).

With respect to the Baker purchases, Debtor further asserts that Case Credit's knowledge that the equipment was being used for commercial purposes is demonstrated by the fact that Case Credit required the Debtor to purchase a commercial warranty policy to protect against the increased wear and tear on equipment used in commercial as opposed to agricultural work. (Gilder Aff. ¶ 11–13). Case Credit denies that Case Corporation, as the manufacturer, has two types of warranties and that it required Debtor to purchase a commercial warranty policy. (Case's Ans. Plt.'s Req. Adm. No. 13).[6] Be-

---

**5.** The sales described in Plaintiff's Exhibits 6 and 7 both occurred as one purchase on November 20, 1995, although Baker used separate purchase orders and security agreements for the sales.

**6.** The court notes that Case Credit answered this request for admission on behalf of Case Corporation, not Case Credit or its dealers. The request questioned whether "Case–IH has two types of

cause of the disputed facts surrounding the warranties, and given that the court struck Gilder's Supplemental Affidavit which included Plaintiff's Exhibit 102, consisting of an invoice for the sale of a warranty by Baker, the Court does not consider the warranty to be evidence supporting Debtor's claims.

Lastly, Johnny Below asserts that a photograph of the Debtor's commercial excavating operation taken in the summer of 1995, by a professional photographer hired by Baker, demonstrates Case Credit's knowledge that the equipment was used for an excavating business. (Below Aff. ¶ 17). A copy of that picture was attached as Exhibit 101 to Plaintiff's Memorandum. Below also maintains that Baker had the photograph enlarged and displayed it for advertising purposes in Baker's Cape Girardeau office.

**Uncontested Purchases from Schneider**

Debtor purchased a used Case 7150 tractor, a used Reynolds 8c scoop, and a used Reynolds 12c scoop from Schneider Equipment Co., Inc. on November 9, 1993. The Security Agreement for this transaction is Plaintiff's Exhibit No. 12. Case Credit has not tendered an affidavit or other evidence in opposition to Debtor's assertion that this equipment was purchased and used for non-agricultural purposes. Case Credit relies only on its general denial as set forth above.

## CONCLUSIONS OF LAW

The parties agree that Mo.Rev.Stat. § 400.9–401(1)(a) (1994) and § 400.9–401(1)(c) are controlling. Those sections state in relevant part:

(1) The proper place to file in order to perfect a security interest is as follows: (a) when the collateral is equipment used in farming operations, ... then in the office of the recorder of deeds in the county of the debtor's residence. . . .

(c) in all other cases, in the office of the secretary of state and in addition, if the debtor has a place of business in only one county of this state, also in the office of the recorder of deeds of such county, . . . .

While the essential dispute in this case is whether the filing by Case Credit or its dealers in Cape Girardeau County is effective to perfect its security interests against the debtor-in-possession, the more precise issue, and the question that must be answered first, is how the collateral in each instance should be defined or characterized. If the collateral is characterized as "equipment used in farming operations," then the liens have been properly perfected by the filing in Cape Girardeau County—the county of the debtor's residence. If however, the equipment is not characterized as such, then the liens were unperfected at filing and may be avoided by the debtor-in-possession.[7]

Section 400.9–109 of Missouri Revised Statutes is also relevant. That section classifies goods into four categories for purposes of Article Nine. Those categories are "consumer goods," "equipment," "farm products,"and "inventory." Mo.Rev.Stat. § 400.9–109 (1994). The classification of goods is critical in any determination under section 400.9–401 of Missouri's Revised Statutes of the steps that are necessary to perfect a security interest in such goods. The Official Comment to section 9–109 of Missouri's Uniform Commercial Code states that the classification of goods is mutually exclusive; that is, "the same property cannot at the same time, and as to the same person be both equipment and inventory [or equipment and farm products]; for example." Mo.Ann. Stat. § 400.9–109 Comment 2 (West 1994). The comment further explains that "[i]n borderline cases—a physician's car or a farmer's jeep which might be either consumer goods

warranty [sic] on the tractors, one for agricultural and the other for industrial purposes." Case Credit responded, stating, "Deny. There is no Case–IH. Case Corporation does not have two types of warranties."

7. Under 11 U.S.C. § 544(a), if, at the commencement of a bankruptcy case, there exists an unperfected lien or security interest, the trustee or debtor-in-possession can avoid the interest, preserve the property for the benefit of the estate

under § 551, and relegate the creditor to the status of a general unsecured creditor. *Yeager Trucking v. Circle Leasing of Colorado Corp. (In re Yeager Trucking)*, 29 B.R. 131, 133 (Bankr. D.Colo.1983); *Armstrong v. United States (In re Galvin)*, 46 B.R. 12, 14 (Bankr.D.N.D.1984). In a Chapter 11 case, the debtor-in-possession may exercise the rights and powers of the trustee. 11 U.S.C. § 1107(a).

or equipment—**the principal use to which the property is put should be considered as determinative.**" *Id.* (emphasis added).

Various courts, including two courts interpreting perfection of under Missouri's Uniform Commercial Code in the context of a bankruptcy avoidance action have addressed this threshold issue where the character of the collateral was disputed. Most recently, in *In re Pipes*, 116 B.R. 154 (Bankr.W.D.Mo. 1990), the Honorable Frank Koger considered whether certain mechanic's tools were "business equipment" or "consumer goods" for purposes of perfection under the same Missouri statute involved in this case. In *Pipes*, ITT Financial Services, Inc. claimed a perfected security interest in mechanic's tools owned by the debtor. ITT's loan documentation referred to the loan as a consumer loan, and ITT therefore, perfected its security interest by a local filing. The Trustee objected to ITT's secured claim arguing that perfection required a central filing with the Secretary of State. In analyzing the character of the tools involved, Judge Koger aptly stated in terms that are directly applicable to the instant case:

> Unfortunately, collateral does not spring onto or from the printed page of a security agreement with a scarlet label upon its forehead. The same items can often be a) inventory; b) business equipment; c) consumer goods; or d) farm equipment. *The nature of the label to be applied depends on the use to which the equipment is put.*

*Pipes*, 116 B.R. at 155 (emphasis added).

The court continued, analyzing the actual use to which the tools were put and found that the tools

> were not the typical hand tools found at the typical residence and used to effect typical household repairs, carpentry, plumbing and all the other chores performed by typical homeowners. Instead, they were extensive and expensive hand tools *used in the debtors' business* of

repairing motor vehicles at the debtors' place of business.

*Id.* at 156 (emphasis added).

The court further observed that "[t]he main factor most courts have used as the measuring rod to determine which category [an] item falls into has been the *use to which the pledging owner reasonably makes of the item*." *Id.* at 155 (emphasis added). Accordingly, the fact that ITT called the loan a consumer transaction did not establish that the collateral for the loan had to be considered consumer goods for perfection purposes. *Id.* at 156. Rather, the court pronounced that "[i]t was incumbent on ITT not only to recognize the proper label at the time of the loan, [based upon use of the collateral] but to [also] follow the statutory requirements for perfection . . . ." *Id.*

The Bankruptcy Court for the Eastern District of Missouri, in the case of *In re P.C.A. Landgrading and Design Contractors, Inc.*, 37 B.R. 468 (Bankr.E.D.Mo.1984) addressed the precise issue of whether tractors used in a land grading operation should be considered "equipment used in farming operations" for determining perfection of the creditor's security interest. In *In re P.C.A. Landgrading*, another perfection dispute involving Case Credit, the debtors purchased their tractors from Case dealers, and Case Credit, again perfected its interests with only a local filing. The bankruptcy trustee challenged Case Credit's perfection based upon the local filing. Because P.C.A. Landgrading used the tractors in its business of grading farm land, the court determined that the equipment was **"used in farming operations"** because the work of grading was work which a farmer would have to do for himself unless he contracted with someone such as P.C.A. Landgranding. *Id.* at 470. Consequently, the court held that Case Credit's local filing properly perfected its security interest. The test employed by the court in *P.C.A. Landgrading* was same test recited above, that is, **"the use for which the collateral was purchased or its actual use."** *Id.*, citing *In re Leiby*, U.C.C.Rpt.Serv. 428 (E.D.Pa.1962).[8]

---

8. Ironically, J.I. Case Co. was the non-prevailing creditor in the *Lieby* case. In *Lieby*, J.I. Case filed its financing statements with the county recorder to perfect an interest in farm equipment even though, as in the instant matter, Case's

The result in *P.C.A. Landgrading* is consistent with the analysis in the Ninth Circuit's decision in *In re Sequoia Machinery, Inc. v. Jarrett*, 410 F.2d 1116 (9th Cir.1969) (cited in *P.C.A. Landgrading*), where the court held that harvesting combines which the debtor used in his custom, "for hire" harvesting business were "equipment used in farming operations" because the actual and intended use of the collateral was for farming operations—namely harvesting. In so holding, the Ninth Circuit specifically rejected appellant's assertion that the character of the equipment should be interpreted in light of the occupational status or contractual arrangements of the debtor-purchaser. *Id.* at 1117. It did not matter that the debtor was not a farmer; the agricultural use of the equipment controlled, and the creditor's central filing was therefore insufficient to perfect its lien. *Id.*

Although the analysis is identical, the results in *P.C.A. Landgrading* and *Sequoia Machinery* are contrasted with the result in *In re Lieby*, where that court held that tractors used in excavating work were not "equipment used in farming operations" because the debtor was not engaged in farming nor did he do excavating on farm property. *Lieby*, 1 U.C.C.Rpt.Serv. at 430. In *Lieby*, as in a majority of courts, the test employed to determine whether equipment was used in farming operations was **the use for which the equipment was purchased or the use actually made.** *Id.* (emphasis added) (stating that "[t]he Code appears ... to have adopted what may be termed a "use" test for this category of goods"). Most courts use this test and reject the approach of *In re Burgess*, 30 B.R. 364 (Bankr.W.D.Okla.1983), which holds, as an apparent single minority view, that normal use of collateral controls characterization. *See Ledford v. Farmers State Bank and Trust (In re Reier)* 53 B.R. 395, 397 (Bankr.S.D.Ohio, 1985), *citing In re*

*Butler*, 3 B.R. 182, 184 (Bankr.E.D.Tenn. 1980). *See also In re Sequoia Machinery*, 410 F.2d at 1118 (stating "the drafters of the Code carefully avoided defining 'equipment used in farm operations' in terms of the occupational status or contractual arrangements of the debtor"); *In re Lieby*, 1 U.C.C.Rpt.Serv. at 430 (stating, "the use to which equipment can be put is not the test"). The early *Lieby* court explained:

> The Code phrase ... "equipment used in farming operations" suggest[s] that the test to be employed is in a sense subjective and empirical; that the **use for which the equipment was purchased or the use actually made of the equipment is the criterion** to be employed when determining what steps are necessary by the secured party to perfect a security interest.

*Id.* at 430 (emphasis added).[9]

Courts have applied the same "use" test to resolve disputes concerning whether collateral should be classified as inventory or equipment for lien perfection purposes. *See Yeager Trucking v. Circle Leasing of Colorado Corp. (In re Yeager Trucking)*, 29 B.R. 131 (Bankr.D.Colo.1983) (holding that the creditor held a perfected security interest by its notation on the title to a tractor trailer because, although the equipment may have been inventory when held by creditor—thereby requiring filing of a financing statement—its use by the debtor made it equipment which was perfected under Colorado's Certificate of Title Act). *See also Ledford v. Farmers State Bank and Trust (In re Reier)* 53 B.R. 395 (Bankr.S.D.Ohio 1985) (holding that debtor's use of stock trailers for display purposes, and not as inventory to be sold, required bank to make a dual filing of financing statements in both the county of debtor's business and with the Secretary of State, and absent such a dual filing, the trustee could avoid bank's lien).

dealer knew the debtor/purchaser worked as a non-agricultural excavation contractor.

9. The Eighth Circuit has held that deciding what constitutes a place of business for purposes of determining where to file to perfect a security interest under Ark.Stat.Ann. § 85–9–401 is a factual issue that involves a finding based on a non-technical statutory standard closely related to

practical human experience. *American Cyanamid, BASF v. McCrary's Farm Supply, Inc. (McCrary's Farm Supply, Inc.)*, 705 F.2d 330, 332 (8th Cir.1983); *Chicago Bank of Commerce v. Carter*, 61 F.2d 986, 988 (8th Cir.1932). The "use" to which equipment is placed for characterizing collateral also appears to be a question of fact.

■ This court agrees with the majority of courts that it is the use of the equipment which controls determination of the character of collateral for perfection purposes. Applying this rule to this case, the only evidence before the court reveals that the Debtor's intended and actual use of the equipment was exclusively for non-farming purposes. Debtor makes this assertion in his affidavit, and his position is buttressed by the affidavit and knowledge of Johnny Below. There is no evidence, whatsoever, that the Debtor used these tractors for any work related to farming operations. In fact, Debtor admits that only the Case 5250 tractor was purchased for use on his farm, and he concedes that Case Credit is properly perfected in that tractor. Because it is the use to which the collateral is put that controls, and not the good faith reliance of the secured party, or what the parties themselves intended, *Central Nat'l Bank of Sterling v. Donahue (In re Cordes)*, 65 B.R. 678 (Bankr.N.D.Ill.1986), Debtor's use in this case commands a finding that the equipment was *not* equipment used in farming operations, and that Case Credit did not properly perfect its security interests by its local filings. Case Credit should have recorded its security interests with the Secretary of State or with the Secretary of State and the county of debtor's residence.

Case Credit's only response to the Debtor's factual assertions concerning use of the equipment is Case Credit's general denial in its Answer to the Complaint and its denial in its Answers to Requests for Admission. This denial is based, not upon specific fact, but upon a lack of information to admit or deny the Debtor's precise assertion. Under Rule 7056(e) of the Federal Rules of Bankruptcy Procedure,

> "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

Rule 7056(e) F.R.Bankr.P.

The court has received no opposing affidavits from Case Credit on behalf of any of the sales personnel for any of the dealers disputing Debtor's and Johnny Below's assertions that the equipment was used or purchased for the non-agricultural purpose of operating Debtor's excavating business. Unlike the facts in *P.C.A. Landgrading,* there also is no testimony in this case that the Debtor used the equipment for grading work which would have been integral to farming operations.

■ As stated, under Rule 7056(e) F.R.Bankr.P., an adverse party cannot rest upon the mere allegations or denials of the adverse party's pleading. Here, unfortunately, Case Credit has provided no more. Case Credit was specifically asked in Plaintiff's Interrogatory No. 5 to "[g]ive the name ... of any person known ... to have knowledge of any statements made by Plaintiff or any of Plaintiff's agents regarding use of the equipment at the time of purchase [and was asked to] state precisely and particularly what is claimed to have been said regarding the use of the equipment...." Case Credit provided no specific statements from any of the persons identified by Case Credit to have specific knowledge of the matter inquired. Such general denials are insufficient to raise a genuine question of material fact.

Under Rule 56(c) of the Federal Rules of Civil Procedure incorporated into Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) Fed.R.Civ.P. If a reasonable jury could return a verdict for the nonmoving party because of a genuine dispute surrounding a material fact, summary judgment may not be entered. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *quoted in Dodd v. Runyon,* 114 F.3d 726, 729 (8th Cir.1997). In determining whether a genuine question of material fact exists, this court is required to view the facts in light most favorable to the nonmoving party, *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983), and must give

the nonmoving party the benefit of all reasonable inferences that may be made from the facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir.1980); *Laws v. United Missouri Bank*, 188 B.R. 263 (W.D.Mo.1995) *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153–61, 90 S.Ct. 1598, 1606–10, 26 L.Ed.2d 142 (1970). Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Dodd v. Runyon*, 114 F.3d at 729 *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510.

Under this standard, the court finds that there is no genuine issue of material fact that causes the court to question the Debtor's use of the equipment or the court's conclusion that perfection required filing with the Secretary of State. While questions may exist concerning what the Debtor represented to Case Credit, and what reliance Case Credit could reasonably place on the purchase orders and Debtor's sales tax exemption certificates, such questions do not raise issues of material fact, because under the controlling legal principles, it is the use to which the collateral is put, and not the good faith reliance of the secured party or what the parties themselves intended, that controls. *In re Cordes*, 65 B.R. at 680 (Bankr.N.D.Ill.1986). After review of Case Credit's pleadings, the discovery responses, and affidavits of each of the dealers, the court is simply left with unrebutted testimony that the equipment was used for commercial excavating purposes.

Finally, the language of the certifications is not legally or factually conclusive of the character or actual use of the collateral. This court has already stated that the fact that a creditor calls a loan "consumer" or "agricultural," does not necessarily characterize the collateral as such for perfection. *In re Pipes*, 116 B.R. at 156. Factually, each of the forms on which Case Credit relies provides the alternative statement that "if the equipment is not used exclusively for farming operations, then the purchaser acknowledges liability for taxes, interest and penalties." Because these forms contain the

alternative that tax liability may be placed on the Debtor, the tax exempt forms cannot be treated as unequivocal assertions of Debtor's use, even if the timing of their execution is overlooked.

The court admits that this is a harsh result. Indeed, Debtor and Case Credit agree that the collateral involved carries a substantial value and that Case Credit's claim exceeds one million dollars. It is also clear that the Uniform Commercial Code's good-faith exception would be effective against the Debtor in a non-bankruptcy context. Section 400.9–401(2) provides that:

A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral ... covered by the financing statement against any person who has knowledge of the contents of such financing statement.

Mo.Rev.Stat. § 400.9–401(2) (1994). Outside of bankruptcy, Debtor's knowledge of the contents of the financing statements, evidenced by his signature thereon and the executed security agreements, would render Case Credit perfected under this good faith exception. The trustee in bankruptcy, and the debtor-in-possession, however, are not persons with "actual knowledge, and in fact, [they] hold powers without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a); *In re Reier*, 53 B.R. at 398. Thus, the court is without authority to effect a result different than that commanded by the Bankruptcy Code and Missouri statutes which unfortunately, continue to require the system of local and dual filing. Finally, while this result is admittedly severe and unexpected, it was not, altogether, unavoidable by Case Credit. When a creditor is uncertain (or as here, should have been uncertain, given the creditor's demonstrated exposure to the Debtor's use of the equipment prior to recording at least some of the financing statements), the "logical and better practice" is for the creditor to file in all possible places where filing might be required. *Id. citing Burgess*, 30 B.R. at 366. Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED that Debtor's Motion for Summary Judgment is hereby

granted, in that the court finds that (1) Case Credit holds unperfected security interests in all of the equipment, except the Case 5270 Tractor, listed on Exhibit 1 to Plaintiff's Motion for Summary Judgment; (2) the unperfected security interests are hereby avoided for the benefit of the bankruptcy estate; and (3) Case Credit Corporation is an unsecured creditor.